UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

MICHAEL JAMES BROWN                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 5:09CV-P159-R

RICKY PARNELL *et al.*                                        DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Michael James Brown, a convicted prisoner currently incarcerated in the Taylor County Detention Center, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the following Defendants in their official capacity for damages: Ricky Parnell, Jailer at the Fulton County Detention Center ("FCDC"); David Osborne, Jailer at the Daviess County Detention Center ("DCDC"); LaDonna Thompson, Commissioner of the Kentucky Department of Corrections; Southern Partners, contracted medical provider at DCDC; and Correctional Medical Service, contracted medical provider at the Louisville Metro Department of Corrections ("Metro Corrections").

This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the complaint will be dismissed.

I.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

## II.

### A. *Commissioner Thompson*

Plaintiff reports that he was booked in the Louisville Metro Department of Corrections on November 3, 2008, and that during his incarceration, he was placed on suicide watch four times, placed in the psychiatric dorm one time, and on a weekly mental health assessment due to serious mental health problems. He was convicted, and on March 6, 2009, he was transferred to Shelby County Jail to be classified and begin his time as a Class-D inmate. He claims that he was classified on April 6, 2009, but never saw a psychiatric doctor/counselor to assess his mental stability. He also advises that there was no system, like at the Roederer Assessment Center where he believes he should have been classified, to process all gang-related inmates to ensure their safety, well being, and protection. Plaintiff, therefore, claims that Defendant Commissioner Thompson violated his constitutional rights (1) "when she enforced the law Class D inmates no longer have to be assessed at the Roederer Assessment Center but can be transferred directly from the county they're convicted at to a Class D facility"; and (2) "when she didn't ensure that [he] received equal protection of the laws being that [he] faced life threatening circumstance due to [his] gang related tattoo's as well as suffered extreme mental anguish . . . ."

The Court will dismiss these claims on two bases. First, Defendant Thompson, as a state official sued in her official capacity for damages, is absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, she is not a "person" subject to suit within the meaning of

§ 1983 when sued in her official capacity for damages. *Will*, 491 U.S. at 71 (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (same). All claims against Defendant Thompson will, therefore, be dismissed.

### B. Southern Partners and Correctional Medical Services

Plaintiff claims that on May 6, 2009, at the DCDC he was escorted from isolation to be evaluated by "Jennifer who works for River Valley (psychiatric center)" and was told that he would be referred to the "psychiatric division" and started on medication for his "mental health problems." Plaintiff advises, however, that he was never seen by the psychiatric division and even filed two requests between May 20 and May 28, 2009, but received no response. Plaintiff alleges that he "ended up having a nervous breakdown/anxiety/stress attack" while at the DCDC. Plaintiff, therefore, contends that Southern Partners, the contracted medical provider at DCDC, violated the Fourteenth Amendment "when the psychiatric division neglected to see me Although Jennifer from River Valley had referred me to be seen by them" and when Southern Partners neglected to answer the referral from Jennifer "due to the fact that had I been protected by the laws then I would of been on medication that could of possibly prevented my nervous breakdown/anxiety/stress attack."

As to Correctional Medical Services, Plaintiff believes that at some point during his incarceration in the Louisville Metro Corrections Department from November 3, 2008, through March 6, 2009, he should have been referred to a doctor for further treatment/medication for his mental health problems. He alleges a Fourteenth Amendment violation "as a result of Correctional Medical Services neglect to ensure that I was properly treated for my mental health

4

problems I underwent extreme psychiatric trauma, mental deterioration, and a nervous breakdown/anxiety/stress attack." He claims that Correctional Medical Services "neglected" to ensure that its staff gave him "proper and adequate mental health treatment."

"It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). "'A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis.'" *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (citing *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978))). "*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well." *Street*, 102 F.3d at 818. Rather, liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.*; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

Plaintiff has not alleged a policy or custom of CMS or Southern Partners or an inadequacy in any particular employee's training that caused any constitutional violation. He has, at most, alleged neglect. Accordingly, the claims against CMS and Southern Partners will be dismissed.

5

### C. DCDC David Osborne and FCDC Jailer Ricky Parnell

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 691 n.55). Plaintiff's official capacity claims against Defendants Osborne and Ricky Parnell, therefore, are actually against Daviess County and Fulton County, respectively. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original). Additionally, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or

custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

### 1. Jailer David Osborne

The foregoing claims occurred during Plaintiff's incarceration at the DCDC from April 9, 2009, until his transfer to the FCDC on May 28, 2009.

#### a. First claim

Plaintiff reports that he was transferred to the DCDC on April 9, 2009, and placed in cell B-133, where conflicts arose from "disrespectful tattoo's" on his arms. He explains that he was formerly affiliated with a gang and has tattoos disrespecting an opposing gang. "Things eventually escalated to a physical altercation which resulted in [Plaintiff] being placed" in disciplinary segregation. Upon release on May 3, 2009, Plaintiff was placed in cell B-134, where he was asked "'what you folk?'" to which Plaintiff answered in the negative but "could feel the tension in the air." On that same date, Plaintiff reports checking out of the cell, being placed in a cell "by booking," and filing a request to Capt. Billings informing him that he feared for his life and wanted to speak with Internal Affairs and/or the Gang Task Force about his

7

classification and housing situation. On May 4, 2009, Plaintiff was seen by Capt. Billings who advised that he could place Plaintiff in administrative segregation, where Plaintiff reported he had conflicts with gang members. Plaintiff was then placed in an isolation cell on May 6, 2009, at which time he filed another request seeking to speak with Internal Affairs or the Gang Task Force. Plaintiff spoke with Lt. Jack Jones who advised that he would contact someone for Plaintiff, but according to Plaintiff, he never did. Plaintiff contends that the Fourteenth Amendment was violated due to the fact that although he informed Defendant Osborne's staff that he feared for his life and needed to speak to Internal Affairs or the Gang Task Force, his staff "neglected to recognize the seriousness of his issue and as a result of their failure to contact Internal Affairs and/or the gang task force to correct my classification and housing situations not only did I receive threats on my life at [DCDC] but was transferred to [FCDC]," where he had to fight an inmate, endured extreme verbal abuse, and was physically assaulted. Plaintiff believes that had Defendant Osborne "ensured that his staff followed the due process of law concerning the seriousness of my issue I wouldn't have went through this trauma."

Plaintiff alleges no Daviess County policy or custom causing his alleged harm. He reports that he was moved time after time when he reported conflict or fear, and while Plaintiff was eventually placed in isolation for his protection, he has failed to show that this placement "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) ("Bruggeman's placement in cell isolation and segregated confinement does not rise to the level of an atypical and significant hardship."). Plaintiff has, therefore, failed to allege a cognizable § 1983 claim against Daviess County.

8

### b. *Second claim*

Plaintiff claims that while in isolation on May 7, 2009, he noticed that a commissary list that was on his desk was missing, and he became suspicious that someone had been in his cell. Later than night, continues Plaintiff, after using the toilet he noticed something that made him think he had been molested by a deputy at DCDC. Plaintiff reports that when a third-shift deputy performed a cell inspection, Plaintiff reported that he was suicidal and was taken to the booking desk. Sgt. Moore questioned Plaintiff about what was going on, and Plaintiff told him he believed he had been molested and "made an official allegation of sexual misconduct." Plaintiff was then dressed in suicide-precaution clothing and placed in the suicide-precaution pod. Plaintiff alleges that after reporting the sexual misconduct, he was neither seen by "medical" nor was a rape kit used on him, which he claims is a violation of the Prison Rape Elimination Act. He additionally contends that his Fourteenth Amendment rights were violated when Defendant Osborne "failed to ensure that his staff followed proper policy and procedure and due process of law when I made the allegation of sexual misconduct and didn't see medical nor was rape kit done."

Plaintiff has alleged no municipal policy or custom causing any constitutional violation. He has not identified any liberty interest to which due process applies. Moreover, courts have found that the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*, "does not create a right of action that is privately enforceable by an individual civil litigant." *LeMasters v. Fabian*, Civil No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009); *Rindahl v. Weber*, No. CIV. 08-4041-RHB, 2008 WL 5448232, at *1 (D.S.D. Dec. 31, 2008); *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008); *Pirtle v. Hickman*, No. CV05-146-S-MHW, 2005 WL 3359731, at *1 (D. Idaho Dec. 9, 2005).

### c. Third claim

Plaintiff claims that on May 8, 2009, prior to being evaluated by a psychiatric doctor or counselor to determine his suicide-precaution level, he was escorted to Capt. Billings' office and relocated to "another high risk disciplinary segregation cell." He was also removed from a cell with individual observation to one without, "which resulted in me being given the opportunity to attempt suicide." Plaintiff thus believes the Fourteenth Amendment was violated when Defendant Osborne (1) allowed his staff to place Plaintiff in high risk disciplinary segregation without a write up or court call (which he claims is also an Eighth Amendment violation); (2) allowed his staff to move him to a cell without individual observation; and (3) failed to ensure that his staff followed due process of law when he was escorted to Capt. Billings' office and relocated to another cell without first being evaluated by a psychiatric doctor or counselor.

Plaintiff has set forth no allegations demonstrating that an official policy or custom of Daviess County which was the "moving force" behind any employee's alleged deprivation of Plaintiff's civil rights. This final claim against Daviess County must also be dismissed.

### 2. *Jailer Ricky Parnell*

Plaintiff was incarcerated at the FCDC on May 28, 2009. On November 12, 2009, Plaintiff filed a letter with the Court advising of his transfer to the Taylor County Detention Center.

### a. First claim

Plaintiff reports that in September 2006, FCDC Deputy Nick Parnell used excessive force against him when he used a taser gun on Plaintiff multiple times. Plaintiff grieved the incident and was given an opportunity to complain to a Department of Corrections Inspector

10

which resulted to his transfer to the Henderson County Detention Center. On May 28, 2009, reports Plaintiff, he was again transferred to FCDC, despite his prior conflict with Deputy Nick Parnell. Plaintiff alleges an Eighth Amendment violation when Defendant Ricky Parnell accepted Plaintiff back into his facility even though he was aware of Plaintiff's history at the jail. Plaintiff claims that he is in constant fear, paranoia, nervousness, stress, and anxiety.

The 2006 incident is barred by the applicable one-year statute of limitations. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (holding that in Kentucky § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1)). With respect to Defendant Ricky Parnell's recent receipt of Plaintiff into his facility, Plaintiff has alleged no Fulton County policy or custom causing his alleged harm and has failed to allege facts demonstrating any constitutional violation by Defendant Ricky Parnell's acceptance of his transfer. Plaintiff has, therefore, failed to allege a cognizable § 1983 claim against Fulton County.

### b. Second claim

Plaintiff alleges that Property Officer Nancy Cason advised him that, unless an inmate is on work crew, he is allowed only one pair of shoes. On July 6, 2009, Plaintiff asked Lt. Kerry Powell whether, since he worked as a cart pusher, he would be allowed to have two pairs of shoes. Lt. Powell advised him that all he does is push carts so there is no need for him to have two pairs of shoes. Plaintiff told Lt. Powell that he was helping "the floor man" with his work detail, but Lt. Powell told Plaintiff that his job was to push carts only. On July 8, 2009, however, Plaintiff was told by Lt. Powell that Plaintiff was no longer needed to push carts because "the laundry man and floor man" were pushing carts and "they had enough workers." Plaintiff

11

believes that his Fourteenth Amendment right to equal protection was violated "due to the fact that the laundry man and floor man jobs are protected being that unless you're listed as a laundry man or floor man you cant do that work detail." Plaintiff claims, "I didn't receive equal protection of the laws due to the fact that I'm listed as a cart pusher and other inmates were allowed to not only do my work detail with me but cut me completely from serving lunch." Plaintiff therefore contends that Defendant Ricky Parnell violated his rights when he allowed his staff to enforce a rule on Plaintiff but not on other workers at the jail.

Plaintiff is attempting to hold Fulton County liable on a *respondeat superior* basis, which is not a viable basis of liability in an § 1983 action. Moreover, Plaintiff has failed to demonstrate an equal-protection violation. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To prove a violation of the Equal Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent. *Washington v. Davis*, 426 U.S. 229 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279. Here, Plaintiff has failed to allege any discriminatory purpose or intent.

For these reasons, Plaintiff's second claim against Defendant Ricky Parnell must be dismissed.

### c. Third claim

Plaintiff alleges a Fourteenth Amendment violation when Defendant Ricky Parnell allowed his staff to enforce a dress code without following due process and by allowing his staff to enforce a new dress code on some of the inmates and not on the whole inmate population.

As with the cart-pusher claim, Plaintiff again fails to allege any discriminatory intent or purpose in the jail's enforcement of the dress code, warranting dismissal of the third claim as well.

### d. Fourth claim

Plaintiff claims that he was approached by Deputy Brian Burton and informed that he would be pulling Plaintiff to work along with another inmate that had previously attacked him. Deputy Burton told Plaintiff that he had discussed the situation with Lt. Kerry Powell and advised that if Plaintiff and his attacker could not agree to work with one another, then they would lose their jobs. Plaintiff claims that since he filed a "conflict" against the other inmate, he should not be forced to be around him at all. He claims a Fourteenth Amendment violation by Defendant Ricky Parnell when he allowed his staff to force him to work around an inmate with whom he had a conflict.

In the instant case, Plaintiff has not alleged that the Fulton County jail officials acted pursuant to a county policy or custom in allowing him to work with an inmate with whom he had a conflict. Rather, Plaintiff's complaint appears to be an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Accordingly, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim.

### *e. Fifth claim*

Plaintiff contends that on August 4, 2009, while on his work detail, he approached the control booth to inform the control officer, Deputy Bridget Ferrell, that he feared for his life and needed to speak to Chief Deputy Jim Williams. Plaintiff asserts that Deputy Ferrell, instead of following policy and procedure when an inmate states that his life is in danger, told him that he needed to step away from the control booth. Plaintiff advises that he disobeyed her direct order and attempted to reiterate the seriousness of his needing to speak with Chief Deputy Williams. He then reports that Deputy Ferrell "sternly" told him to step away, and he obeyed. Shortly thereafter, Chief Deputy Williams approached Plaintiff and escorted him to "detox" for disobeying a direct order. Chief Deputy Williams would not allow Plaintiff to speak to him and locked him in the detox cell. Plaintiff began knocking on the door stating that "'I fear for my life, my life is in danger, I need to speak to Jim Williams, Jeff Johnson, or Ricky Parnell, I needed to speak to the police!!'" Plaintiff reports repeating this over and over until Chief Deputy Jim Williams and Jeff Johnson entered the cell with taser guns and Plaintiff was given the opportunity to attempt to voice his complaint. Plaintiff states that he was placed on disciplinary segregation but was neither issued a write up nor allowed to go to court call to answer his charges. He therefore contends that the Fourteenth Amendment was violated when Defendant Ricky Parnell failed to ensure that his staff followed policy and procedure when an inmate states that his life is in danger; when Deputy Ferrell neglected to follow policy and procedure when he told her he feared for his life; and when Defendant Ricky Parnell allowed his staff to place him in disciplinary segregation without receiving a write up or court call.

With respect to this incident, Plaintiff claims that jail personnel failed to follow policy, not that they acted pursuant to a county policy or custom in causing his alleged harm. In addition, Plaintiff does not allege facts demonstrating that his placement in segregation "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Accordingly, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim.

### f. Sixth claim

Plaintiff reports that on June 1, 2009, he filed a request regarding his mental health problems, was seen by a doctor on June 6, 2009, and was referred for a psychiatric evaluation, which did not occur until July 20, 2009. Plaintiff believes the "administration neglected [me] proper, adequate, and timely psychiatric treatment" and violated the Eighth and Fourteenth Amendments. Plaintiff claims that Defendant Ricky Parnell neglected to approve the doctor's referral in a timely manner.

Plaintiff is attempting to hold the county responsible for Defendant Ricky Parnell's alleged delay in approving his referral. The county cannot be held responsible based on *respondeat superior*. Moreover, Plaintiff does not allege that Defendant Ricky Parnell acted pursuant to a Fulton County policy or custom in delaying the referral, and he has alleged no injury. This claim must be dismissed.

### g. Seventh claim

Upon being booked in FCDC on May 28, 2009, Plaintiff informed the booking officer of his gang-related tattoos and, per jail policy, pictures were taken. Plaintiff was placed in cell 107 and conflicts arose due to his tattoos. Plaintiff advises that he did not complain about this since

15

he was placed in a single cell at DCDC and did not want to be placed in an isolated environment again, since he had "obvious gang related tattoo's," and in an attempt to have clear conduct and no incident reports at FCDC. Plaintiff claims that while in cell 107, "I was in constant physical danger and fear. I underwent extreme verbal abuse and at one point they forced me and inmate Darrell Green to fight against our will then later I was physically assaulted and left with no choice but to report the incident to FCDC staff." Plaintiff claims that Defendant Ricky Parnell violated the Fourteenth Amendment when (1) he allowed his staff to place him in cell 107 around opposing gang members even though Plaintiff informed the booking officer of his tattoos and pictures were taken; and (2) he, knowing of the gang-related inmates in his jail, failed to classify him to keep him safe.

None of these allegations demonstrate that FCDC staff actions occurred as a result of a policy or custom implemented or endorsed by Fulton County, and Plaintiff concedes that he did not report any conflicts, fear, or verbal abuse to FCDC staff until *after* he was physically assaulted. Plaintiff has failed to state a cognizable constitutional claim arising out of these facts.

The Court will enter a separate Order consistent with this Memorandum Opinion.

Date:

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
Daviess County Attorney
Fulton County Attorney
4413.005